UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CARY A BAYHAM, JR.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 11-1815** |
| | * | |
| **GROSSE TETE WELL SERVICE, INC., ET AL.** | * | **SECTION "L"(1)** |
| | * | |

## ORDER & REASONS

Before the Court is a Motion for Summary Judgment (Rec. Doc. No. 38) filed by Plaintiff, and a Cross-Motion for Summary Judgment (Rec. Doc. No. 44), filed by Defendant. The Court, having reviewed the submitted memoranda and the applicable law and having heard oral arguments on the motions, is ready to rule. For the following reasons, the Plaintiff's Motion for Summary Judgment is granted, and the Defendant's Cross-Motion for Summary Judgment is denied.

## I.  BACKGROUND

This case arises out of injuries sustained by Plaintiff Carl A. Bayham, Jr., on December 1, 2010, while he was employed by Gross Tete Well Services ("Grosse Tete") as a floor hand, assigned to a truck-mounted workover rig secured to a barge, the GROSSE TETE 1. Plaintiff alleges that, on that date, he was advised that the well he was working on was "dead" (that is, there were no combustible gases present). However, as he was using an acetylene torch to cut bolts on the well, the well head exploded, causing him serious burns and injury to his low back and other parts of his body. Plaintiff filed suit in this Court against Defendant Grosse Tete, his employer, as well as Louisiana Delta Oil Company ("Louisiana Delta"), the well owner, and B&B Oilfield Services ("B&B"), the site consultants. Plaintiff alleges that his injuries were a direct result of Defendants' negligence, including their failure to provide a reasonably safe place

1

to work, negligently representing that the wellhead was free of combustible gases, and negligent supervision. Plaintiff has filed suit under the Jones Act and general maritime law, seeking damages for mental and physical pain and suffering, loss of wages, loss of earning capacity, past and future medical expenses, permanent disability, and loss of life's enjoyment, and additionally seeks maintenance and cure.

Defendant Grosse Tete has filed an answer denying liability and asserting the affirmative defense that Plaintiff was not a Jones Act seaman. Therefore, Grosse Tete contends, Plaintiff's claim against it is governed by workers' compensation and not the Jones Act. Grosse Tete also argues that the accident was the result of the negligence of Plaintiff and/or a third party. In addition, Grosse Tete has filed a cross-claim against Defendants Louisiana Delta and B&B. Grosse Tete asserts that the damages it sustained as a result of the explosion were caused by the negligence of Louisiana Delta and B&B. According to Grosse Tete, Louisiana Delta and B&B are responsible because they provided false information regarding the nature of the production tree, failed to determine the true nature of the production tree, failed to properly train their employees, and failed to properly protect Grosse Tete's property.

Defendant Louisiana Delta has filed an answer denying liability and asserting affirmative defenses, including comparative negligence, negligence of a third-party, and failure to mitigate damages. Louisiana Delta has also filed cross-claims against Grosse Tete and B&B, asserting that the explosion and damage to Louisiana Delta's property was caused by the negligence of Grosse Tete and B&B, including failure to adequately plug the well, failure to train their employees, and failure to take sufficient precautionary measures. Finally, Louisiana Delta has filed a counter-claim against Mr. Bayham, contending that the explosion and property damage were a result of his negligence.

Defendant B&B has filed an answer denying liability and asserting affirmative defenses.

B&B denies that the work was directed and/or supervised by its representatives and denies that it made any claims about the status of the wellhead.

## II. PRESENT MOTIONS

Plaintiff has filed a Motion for Summary Judgment on the issue of seaman status (Rec. Doc. No. 38). Plaintiff argues that he qualifies as a Jones Act seaman in this case. In support of this argument, Plaintiff first contends that the attachment of Grosse Tete's workover rig to the keyway barge created a "special purpose craft," which constitutes a vessel. Plaintiff cites the *Manuel v. P.A.W. Drilling and Well Service, Inc.*, 135 F.3d 344 (5th Cir. 1998), as support for this assertion. Second, Plaintiff asserts that it is undisputed that he was permanently assigned to this vessel for the duration of the operation at the time of the accident.

Defendant has filed a Cross-Motion for Summary Judgment in addition to his opposition to Plaintiff's motion (Rec. Doc. No. 44). In it, the Defendant argues that the Plaintiff does not enjoy Jones Act seaman status. First, Defendant contends that the *Manuel* holding is distinguishable from the instant case because in that case, the rig had been bolted to the barge for more than two years, and it was the only barge on which the plaintiff had worked for his two months of employment. Second, Defendant asserts that Plaintiff was not "permanently assigned" to the vessel, because a several day assignment is not akin to a "change in assignment," as contemplated by *Chandris v. Latsis*, 515 U.S. 347 (1995). Third, Defendant argues that Plaintiff does not have the "substantial connection" to a vessel required for Jones Act seaman status. Defendant asserts that it is undisputed that Plaintiff had been working on the barge for only two days before his injury and spent only nine days in the past year on the barge where the accident occurred, which does not equal 30% of his employment. Furthermore, Defendant argues that it does not own or control the barge, which was owned by LDOC and controlled by the "company man," a representative of LDOC, who was onboard the day of the accident.

Plaintiff has filed an opposition to Defendant's Cross-Motion. Plaintiff argues that the fact that he was working on that particular vessel for two days was fortuitous and is irrelevant because his assignment aboard the vessel was for the duration of the job, which was expected to last for at least twenty-two days. In addition, Plaintiff argues that he need not show a "substantial connection" to the vessel. Citing *Barrett v. Chevron*, 781 F.2d 1067 (5th Cir. 1986), Plaintiff asserts that Defendant is misreading the second prong of the test. Rather than requiring both a permanent assignment to a vessel and a substantial connection to the vessel (which requires that the Plaintiff have spent at least 30% of his time assigned to Defendant's vessel). Plaintiff argues that the test is disjunctive and only requires one of the two showings, namely, either a permanent assignment or a substantial connection. In any event, Plaintiff maintains that he can show that he spent at least 30% of his employment assigned to vessels "under common ownership or control" of Defendant. According to Plaintiff, each time Defendant attached its workover rig to a barge, a "special purpose craft" was created, and that craft was under the control of Defendant's workers for the duration of the job. As a result, Plaintiff concludes, if this Court determines that he must show both a permanent assignment and the 30% rule, Plaintiff would pass the test for seaman status.

## III. LAW AND ANALYSIS

### 1. Standard of Review

A district court can grant a motion for summary judgment only when the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a

4

reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

**B. Analysis**

The test for Jones Act seaman status is two-pronged: First, the worker must be assigned permanently to a vessel or have performed a substantial part of his work on the vessel at issue. Second, the capacity in which the worker is employed must contribute to the function of the vessel. *See Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir. 1959); *see also Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1072 (5th Cir. 1986). In this case, the test presents three issues: (1) whether Plaintiff was assigned to a "vessel"; (2) whether Plaintiff was assigned permanently to or performed a substantial part of his work on the vessel; and (3) whether the capacity in which the Plaintiff was employed contributed to the function of the vessel. The Court will address these issues in turn.

**1. Vessel status**

In support of his Motion for Summary Judgment, Plaintiff cites the Fifth Circuit opinion in *Manuel v. P.A.W. Drilling & Well Service, Inc.*, 135 F.3d 344 (5th Cir. 1998). In *Manuel*, the

Fifth Circuit held that a workover rig that was attached to a barge constituted a "special purpose craft" that qualifies as a vessel for Jones Act purposes. Plaintiff argues that because Defendant's workover rig was similarly attached to a barge, it is also a "special purpose craft." Defendant disagrees with this point, arguing that the fact that the rig in *Manuel* had been bolted to the barge for more than two years distinguishes it from the instant suit. Rather, Defendant contends, the facts of *St. Romain v. Industrial Fabrication and Repair Service, Inc.*, 203 F.3d 376 (5th Cir. 2000), are more analogous to the case at bar.

In evaluating whether a structure is a vessel, courts begin by examining "the purpose for which the craft is constructed and the business in which it is engaged." *The Robert W. Parsons*, 191 U.S. 17, 30,(1903); *see also Burchett v. Cargill, Inc.*, 48 F.3d 173, 176 (5th Cir. 1995).

In *Manuel*, the court was confronted with a workover rig, Rig 3, that had been attached to a barge. As in this case, the plaintiff was an employee of the rig owner and would be transported to Rig 3 each morning, wherever it was located. Also similar to this case, the barge itself contained no steering mechanisms, navigational devices, or crew quarters. The rig had no motor power and would be moved by tugboat from location to location. The Fifth Circuit held that "evidence demonstrated that transporting the necessary equipment from location to location across navigable waters was essential to Rig 3's work. Rig 3 is, therefore, a vessel as a matter of law." *Manuel*, 135 F.3d at 351.

The instant suit is nearly identical to the facts in *Manuel*, and therefore the Defendant's rig also qualifies as a "vessel." In both cases, a truck-mounted workover rig has been driven onto a barge, attached to that barge, and transported to wellhead worksites. Defendant is correct in pointing out two differences between the two cases: the method of attachment of the rig and the duration of such attachment. Nevertheless, these two facts are not sufficient to change the outcome of the analysis. Although the defendant in *Manuel* bolted the rig to the barge and the

6

current Defendant attached the two by hydraulic stabilizers, chains, cables, and binders, the Fifth Circuit made no statement in its opinion that the method of attachment was dispositive. Nor did the Fifth Circuit state that the length of the attachment -- two years in *Manuel*, and two days in the instant suit -- weighed heavily in its analysis. It is true that these two factors lend a sense of permanence to attachment of the rig, but the Fifth Circuit did not hold that the mode of attachment of the rig to the barge was necessary for vessel status. In sum, the method and length of attachment does not change the Fifth Circuit's ultimate conclusion: that "transporting the necessary equipment across navigable waters was essential to [the rig's] work." *Id.* at 351. Therefore, the rig in this case is also a "special purpose craft" that qualifies as a Jones Act "vessel."

As for Defendant's argument that this case is more like the facts presented in *St. Romain*, the Court notes that several key differences between the facts of the suits distinguish that particular holding. In. *St. Romain*, the plaintiff worked as a "plug and abandon helper" on an offshore platform. The plaintiff was transported to the platform by liftboat, performed his work on the platform each day, and slept and ate on the liftboat. The Fifth Circuit held that the plaintiff was not a seaman aboard the liftboat, as his work was done on the platform, and the liftboat was used only intermittently for support. In the instant case, Plaintiff performed his work aboard the barge and argues that said barge to which the rig was attached is a "vessel." In sum, the differences between the key facts of the case appear to make the instant case more analogous to *Manuel* than *St. Romain*. The rig at issue is, therefore, a vessel for the purposes of the Jones Act.

**2. Permanent assignment or "performed substantial part his work"**

The second issue with whether Plaintiff has the sort of substantial connection to the vessel that is necessary for Jones Act seaman status. Plaintiff first argues this test is disjunctive, and that he need only show permanent assignment *or* that he performed a substantial part (or

7

30%) of his work on the vessel. Second, he argues that he was permanently assigned to the vessel because, at the time of the accident, he had been assigned exclusively to the vessel for the duration of the job. Plaintiff relies on the holding in *Chandris*, which states that if an employee receives a change in assignment, the assessment of the substantiality of his vessel-related work should be made on the basis of his activities in his new position. *Chandris*, 515 U.S. at 371-372. Because Plaintiff had worked aboard the barge for Louisiana Delta Oil Company after being assigned to that vessel for the duration of the job, he argues that he had been "permanently assigned" to that vessel.

Defendant counters that Plaintiff had only worked aboard this vessel for two days before the accident, and a total of 9 days for Louisiana Delta Oil Company over the previous year. This, Defendant contends, does not equal 30% of Plaintiff's employment, and therefore Plaintiff does not qualify as a Jones Act seaman.

The Plaintiff is correct in his analysis. In the first place, the test for connection to a vessel is, as the Plaintiff argues, disjunctive. *See Barrett*, 781 F.2d at 1073 ("The test is, of course, disjunctive, and permits a worker to be a crew member if he does substantial work on the vessel even though his assignment to it is not 'permanent.'"). As a result, the Court need not engage in the 30% analysis because Plaintiff can show that he was permanently assigned to the vessel at issue as that term has been construed.

In *Chandris*, the Supreme Court contemplated a situation in which an employee who works on land may become a seaman when he is assigned to a vessel. The Court held that "when a maritime worker's basic assignment changes, his seaman status may change as well." *Chandris*, 515 U.S. at 372. As a result, when a court is evaluating an employee's connection to a vessel, a plaintiff "is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." *Id.* at 373.

In the instant case, it is uncontested that between jobs on wells that required water transport, Defendant's employees would work land jobs. According to the Supreme Court's holding in *Chandris*, although the Plaintiff would clearly not be seaman during his landlocked duty, the Court would have to make a separate evaluation of his duties once his assignment changed to one on a vessel. Therefore, Plaintiff is correct when he asks the Court to evaluate the substantiality of his service about the instant vessel separately from any prior assignments. And, because it is uncontested that Plaintiff worked exclusively aboard the vessel at issue once his assignment began, he was "permanently assign[ed]" to that vessel, as contemplated by the Jones Act.

The Defendant argues that the Plaintiff's assignment to the vessel at issue is not a "change is assignment" as discussed by the Court in *Chandris*. According to Defendant, Plaintiff had only been assigned to the worksite for two days before the accident, and had he not been hurt, the job was expected to last only 22 days. This, according to Defendant, is not a "change in assignment," but is rather simply a change in worksite. Therefore, Defendant argues, the substantiality of Plaintiff's work aboard the vessel should be evaluated in terms of his work aboard various barges for the previous year, rather than focusing on the two days after he had been assigned to the vessel where he was injured.

Defendant's argument does not have any support in the jurisprudence. Nowhere in the *Chandris* does the length of time of an assignment prior to injury, or its apparent impermanence, factor into the analysis. In the *Chandris* opinion, Justice O'Connor cites to the dissent in *Barrett*, in which Judge Rubin states "[a]n assignment to work as a crew member, like the voyage of a vessel, may be brief, and the *Robison* test is applicable in deciding the worker's status during any such employment." *Chandris*, 515 U.S. at 373 (citing *Barrett*, 781 F.2d at 1077 (Rubin, J., dissenting)). Indeed, the Supreme Court contemplated a scenario quite similar to the one at bar

9

when holding that a court should focus on a new assignment when evaluating an employee's duties. To hold otherwise would result in the disqualification of the majority of traditional bluewater sailors from Jones Act seaman status, because the typical sailor may find work with another employer after completing a job, possibly resulting in assignment to several different vessels over the course of a year. Such a conclusion runs counter to the purpose of the Jones Act, and cannot be maintained. As a result, the Plaintiff was permanently assigned to the vessel, and therefore satisfies the first prong of the *Robison* test.

**3. Whether the capacity in which Plaintiff was employed contributed to the function of the vessel**

The second prong of the *Robison* test for seaman status asks whether the capacity in which a worker was employed contributed to the function of the vessel. The parties did not discuss this issue, and it may be dealt with briefly. Plaintiff was employed as a floorhand on board Defendant's rig. A floorhand handles all the drill pipe on the platform floor, and may also repair pumps, string cables through pulleys and blocks, and assist other members of the crew. The function of the vessel at issue was to transport equipment to well heads where the crew would perform the necessary jobs on the well heads. To be brief, it is clear that Plaintiff was employed in a capacity that contributed to the function of the vessel. Therefore, Plaintiff has also satisfied the second prong of the *Robison* test.

In sum, because Plaintiff has satisfied both the first and second prongs of the *Robison* test, he qualifies for seaman status under the Jones Act.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Rec. Doc. No. 38) is hereby **GRANTED** and Defendant's Cross-Motion for

Summary Judgment (Rec. Doc. No. 44) is hereby **DENIED**.

    New Orleans, Louisiana, this 21st day of May, 2012.

                                                             UNITED STATES DISTRICT JUDGE

Summary Judgment (Rec. Doc. No. 44) is hereby **DENIED**.

New Orleans, Louisiana, this 21st day of May, 2012.

UNITED STATES DISTRICT JUDGE